Filed 2/3/26  O'rrell v. Wilmington Savings Fund Society CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LISA O'RRELL,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>WILMINGTON SAVINGS FUND SOCIETY, FSB, et al.,<br><br>        Defendants and Respondents. | B339058<br><br>Los Angeles County<br>Super. Ct. No. EC066736 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frank M. Tavelman, Judge.  Affirmed.

Ronald H. Freshman for Plaintiff and Appellant.

Peter Salmon and Jillian A. Benbow for Defendants and Respondents.

_____

The trial court ruled against Lisa O'rrell after a bench trial.  O'rrell appeals the court's denial of her motion to conform her complaint according to proof and the court's finding against

her on her claims under the California Homeowners Bill of Rights (the HBOR, Civ Code § 2920 et seq.). We affirm. Undesignated statutory citations are to the Civil Code.

I

O'rrell refinanced her home in Studio City in 2008 with an adjustable rate mortgage loan from JPMorgan Chase Bank, N.A. for $800,000. Chase later assigned the beneficial interest to NRZ Pass-Through Trust IV, U.S. Bank National Association, who then assigned it to Pretium Mortgage Credit Partners I Loan Acquisition, LP, who assigned it to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as Trustee for Pretium Mortgage Acquisition Trust.

O'rrell stopped making payments in April 2011 and a notice of default was recorded. The notice was later rescinded. O'rrell stopped making payments again in April 2012, and another notice of default was recorded. A notice of trustee's sale was recorded on March 20, 2013, and then rescinded after O'rrell entered into a loan modification with Chase.

The loan modification reduced O'rrell's interest rate to two percent for five years and deferred $205,000 of her principal balance to be interest free. Chase initially scheduled the new payment for January 1, 2014, but there was a delay in booking the modification until May 2014. O'rrell executed the modification in May.

In July 2014, Nationstar Mortgage LLC took over servicing the loan.

O'rrell made one payment pursuant to the modification but then missed the next. A third notice of default was recorded.

In March 2015, Chase sent O'rrell a letter with a check for $16,445.36. The letter explained the check was reimbursement

2

for a mistake in the modification process. O'rrell testified she did not receive the letter. Chase later explained further that the loan modification was supposed to go into effect in January, but instead took effect in May. The check represented the extra funds O'rrell paid due to this error, taxes she might have incurred, and $50 for the inconvenience.

A notice of trustee's sale was recorded on April 16, 2015. In May, O'rrell brought her loan current, and the notice of default and trustee's sale were rescinded.

In October 2015, Chase sent O'rrell an unclaimed funds notice, and then a replacement check. O'rrell used the funds to cure some delinquent payments.

O'rrell made her last two payments on the loan in December 2015 and January 2016. She missed her February 2016 payment and never made another.

In May 2016, on behalf of Wilmington, Rushmore took over servicing responsibilities for the loan. O'rrell's loan was in default. Rushmore sent a welcome package to O'rrell, including information to contact the United States Department of Housing and Urban Development (HUD) and a statement of the debt based on the records it received from previous servicers. Rushmore asked that O'rrell review the debt and contact it if she disputed this amount within 30 days or it would assume the numbers were accurate. O'rrell did not do so.

On May 23 and 24, 2016, Rushmore sent letters to O'rrell about her loan laying out loss mitigation options. On May 30, Rushmore sent another letter identifying Michael Perez as O'rrell's single point of contact and encouraging her to contact him. Rushmore sent three more similar letters between May 31

3

and June 24. During the same period, Rushmore called O'rrell 16 times.

On July 19, Rushmore sent O'rrell a notice of intent to foreclose with return service requested. The letter informed O'rell that the balance of the loan would be accelerated and foreclosure initiated if not cured by August 23. The letter further stated if this happened, O'rrell would have the right to assert any defense she might have to the default. Rushmore called O'rrell five more times between sending the letter and August 23. On August 23, Rushmore sent a letter about a deed-in-lieu.

O'rrell emailed Perez on August 23, attaching a letter explaining she had been unable to pay her mortgage because she had been on a payment plan for utility company Los Angeles Department of Water and Power and paying for her adult daughter's medical expenses. O'rrell stated she could now resume paying her monthly amount, but no more.

O'rrell testified she did not respond to Rushmore before August 23 because she felt paralyzed and terrified. She pointed to the initial communications from Rushmore which incorrectly identified the loan amount as over $1 million. O'rrell felt overwhelmed because she had just finished resolving one error with the previous servicer, and now there seemed to be another, and it was too much with everything else going on in her life.

Perez responded to O'rrell's email, asking her to call, which she did that same day on August 23. O'rrell expressed that she did not want another loan modification because she did not want to lose the two percent interest rate or the deferred interest on a portion of her principal. She was interested in a repayment plan, but said she would need a long time because she could not pay much more than her current amount. Perez told her he would

4

send her a written application for a loan modification, which he did that day. Perez also provided O'rrell with the number for the Keep Your Home California program, but after contacting the program, O'rrell reported she did not qualify because of the amount of her loan.

Perez spoke with O'rrell again on August 24 and asked O'rrell to provide her financial information over the phone to be considered for a repayment plan. Perez informed O'rrell that any repayment plan offered would likely be less than a year long. O'rrell refused. She later said that she was uncomfortable providing the information on the phone and would not be able to meet those terms.

O'rrell also declined to fill out the loan modification application Perez sent. Because she did not have much income, she did not think she would qualify. She also testified at trial that she did not want to lose her two percent interest or deferred principal amount. She agreed with the judge that she did not know for certain what the loan modification offer would have been because she never filled out the application.

Wilmington substituted Clear Recon Corp. as trustee on October 10, 2016.

On October 13, Rushmore sent a letter telling O'rrell that it was closing its file on her loan because she had not returned a completed application. Rushmore encouraged O'rrell to reach out if she wanted her loan to be reviewed further.

Clear Recon recorded a notice of default on October 26, 2016. This included a declaration that stated the beneficiary's agent had exercised due diligence to contact the borrower, including sending a certified letter on July 25, 2016. Clear Recon set the trustee's sale for March 21, 2017.

5

On October 28, O'rrell sent a letter to Clear Recon requesting a debt validation.

On November 3, Rushmore sent another letter discussing foreclosure prevention options. Rushmore sent a letter on December 8 encouraging O'rrell to remain in contact regarding the pending foreclosure.

In late December, O'rrell submitted a complaint to the Consumer Financial Protection Bureau. On January 11, 2017, Rushmore responded to O'rrell's complaint, providing the note and mortgage/deed of trust, assignments of deed of trust, note allonges, payment history for Rushmore's servicing of the loan, prior servicer payment history, most recent billing statement, notice of sale of ownership, and notice of servicing transfer.

On February 1, Rushmore sent another copy of the loan modification application to O'rrell. On February 21, Rushmore sent another letter saying it was closing its file because it had not received the requested documentation from O'rrell. On February 27, Rushmore sent a letter providing the payoff amount to bring O'rrell's loan current.

On March 13, O'rrell emailed Perez and told him she had an upcoming second interview for a good-paying job. Perez spoke with O'rrell the following day. She asked if the foreclosure sale could be postponed. Perez said it could not, based only on the possibility of a job, but that it might be continued again. The sale indeed went forward. Third party DLI Properties, LLC bought the property.

On March 24, 2017, Chase sent O'rrell a check for $1,780.36 as a refund for corporate advance fees.

O'rrell sued Wilmington, Clear Recon, and DLI for declaratory relief, breach of contract/estoppel, violation of the

6

California Homeowner Bill of Rights, violation of the Rosenthal Fair Debt Collection Practices Act (§1788 et seq.), cancellation of instruments, and wrongful foreclosure. After extensive motion practice in the trial court, the case went to a bench trial against remaining defendants Wilmington and Clear Recon on the remaining claims for violations of the HBOR and declaratory relief.

After the close of evidence, O'rrell moved to amend to conform to proof. She argued Wilmington's evidence fleshed out her allegations of violations of the HBOR. The trial court denied the motion, ruling that the operative complaint did not encompass the new allegations.

The court took the matter under submission and issued a detailed minute order. The court found O'rrell had not proved a violation of the HBOR by a preponderance of the evidence and awarded judgment to Wilmington.

## II

O'rrell argues the trial court erred in denying her motion to conform her complaint to proof. She argues that, even if the court did not err in denying the motion, it erred in finding against her on the HBOR claims in her complaint, and its concomitant failure to award her damages. These arguments are incorrect.

## A

The trial court correctly found the operative complaint did not encompass the additional HBOR claims O'rrell sought to bring.

In her complaint, O'rrell complains that Wilmington failed to provide her "with notice of her right to demand a copy of the note, evidence of ownership and accounting of her debt." She further alleges that Wilmington's agents refused to provide her "any evidence of their claim to collect upon the debt or provide the account as required by law." She also argues Wilmington and its agents "made no effort to contact Plaintiff to discuss pre-foreclosure alternatives." She says the declaration attached to the Notice of Default contains false statements. She explicitly mentions sections 2923.5, subdivision (a)(1), 2923.55, subdivision (b)(1)(B), and 2924.17.

After the trial, O'rrell asked the court to allow her to conform her complaint to the proof that came out at trial by adding claims under sections 2923.6 and 2923.7. These sections detail a mortgage servicer's obligations when the borrower submits a loan modification application and the obligation to identify a single point of contact and that person's responsibilities.

The trial court denied the motion because the complaint did not fairly cover the new claims. O'rrell argues this finding was wrong. It was not.

O'rrell argues that, because the evidence came from Wilmington, Wilmington cannot be prejudiced. This is untrue. Wilmington prepared its defense to meet O'rrell's allegations in the complaint. This included that Wilmington or its agents had failed to reach out to O'rrell to discuss pre-foreclosure alternatives. Wilmington put forth substantial evidence to defeat that claim, including dozens of calls and letters. O'rrell now takes issue with the content of those many contacts. We cannot know what other evidence Wilmington might have included if it

8

knew the content would be put at issue. We do not know that this is all the information Wilmington had. Michael Perez, the representative to whom O'rrell spoke and corresponded, did not testify. His testimony was not necessary to defeat the claim O'rrell laid out in her complaint. However, he may have relevant information about O'rrell's proposed new claims. But Wilmington did not have the chance to respond because it did not know O'rrell would raise these issues.

The trial court properly denied this request.

### B

O'rrell argues that the trial court erred in its ruling on the HBOR claims that the court did reach. To establish a claim under the HBOR, O'rrell must show that Wilmington violated a section of the HBOR *and* that the violation was material. (*Reese v. Select Portfolio Servicing, Inc.* (2024) 107 Cal.App.5th 1179, 1187–1188.) To be material, the violation must have affected O'rrell's loan obligations, disrupted her loan-modification process, or otherwise harmed her efforts to be considered for a loss mitigation option. (*Ibid.*)

We address each section O'rrell claims Wilmington violated through its agent Rushmore.

### 1

Civil Code section 2923.5(a)(1) states that a mortgage servicer "shall not record a notice of default pursuant to Section 2924 until . . . Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e)." Paragraph (2) requires the mortgage servicer to contact the borrower by phone or in person and to assess the borrower's financial situation and to explore options to avoid foreclosure.

9

The servicer shall advise the borrower she has the right to a later meeting, to occur within 14 days.  The servicer must also provide the toll-free number for HUD.

The trial court found Wilmington had complied with subdivision (a)(1) because Rushmore spoke on the phone twice with O'rrell by the time it recorded the notice of default.  The record supports this finding.  O'rrell spoke to Perez on August 23 and 24 before Clear Recon recorded the notice of default on October 26, 2016.  Each of those conversations covered foreclosure alternatives, including a loan modification or a repayment plan.  Perez also provided the number for a state housing program, which O'rrell called, and mailed the number for HUD.

O'rrell argues that, because the declaration filed in support of the notice of default stated the mortgage servicer complied through due diligence, that was the only way Clear Recon could show compliance.  Moreover, O'rrell argues, Rushmore did not comply with the statutory requirements for due diligence so the declaration is false.

O'rrell cites *Billesbach v. Specialized Loan Servicing LLC* (2021) 63 Cal. App. 5th 830, 848 (*Billesbach*) for the proposition that a false declaration is a statutory violation.  However, the significance of the case is its holding that pre-foreclosure technical violations that are cured before the foreclosure sale are not as a matter of law a material violation of the HBOR.  Here, we agree with the trial court that Wilmington complied with section 2923.5(a)(1) through its phone contacts with O'rrell.  Because Wilmington cured any violations before the foreclosure sale, earlier technical violations were irrelevant as a matter of law.

10

Civil Code section 2923.55(b)(1)(B) requires a mortgage servicer to provide a written statement that the borrower may request the following:

"(i) A copy of the borrower's promissory note or other evidence of indebtedness.

"(ii) A copy of the borrower's deed of trust or mortgage.

"(iii) A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.

"(iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due."

O'rrell concedes Wilmington provided documents in response to her request for validation of the debt. However, she argues the documents provided do not show Wilmington was entitled to collect the debt. O'rrell raised this argument in a different context at the demurrer and judgement at the pleading stage, arguing title issues precluded Wilmington from foreclosing. The trial court correctly found O'rrell had raised arguments showing only that the challenged assignments were voidable rather than void. This prevented O'rrell from raising the argument. (*Mendoza v. JP Morgan Chase Bank* (2016) 6 Cal.App.5th 802, 810–811 [where alleged assignment is merely voidable, not void, the borrower does not have standing to challenge].) Nor does this assertion support O'rrell's argument that the assignments do not provide reliable evidence that Wilmington had the right to foreclose.

O'rrell also argues she did not receive a sufficient payment history. She testified that she requested an accounting from

Chase and Clear Recon. Clear Recon sent her some documents and told her she could request further documents from Rushmore. O'rrell did not do so.

Regardless of whether the accounting provided to O'rrell was what she wanted, she has not shown that a failure to provide it was a material violation. She does not deny she was in default, and she testified she did not have sufficient funds to cure the default. She has not shown any harm from these alleged violations.

3

Section 2924.17 requires that a declaration filed in support of a notice of default "be accurate and complete and supported by competent and reliable evidence." O'rrell argues the declaration was not accurate because it stated Rushmore completed due diligence in contacting O'rrell. As discussed above, we have found Rushmore complied with the statute. And, even if there was a violation, Rushmore cured it before the foreclosure sale, and therefore it was not material. (*Billesbach*, *supra*, 63 Cal.App.5th at p. 848.)

O'rrell then argues competent and reliable evidence did not support the declaration. This argument is also based on an argument we have already rejected. O'rrell argues the note and assignments did not provide reliable evidence of the debt. As discussed, this is incorrect.

C

Because O'rrell has not established any material violations of the HBOR, we do not address her arguments about damages.

**DISPOSITION**

We affirm and award costs to Wilmington and Clear Recon.


WILEY, J.

We concur:


STRATTON, P. J.


VIRAMONTES, J.

13